IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ELLA M. PERKINS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:05cv0867-VPM |
| | ) | [WO] |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Claimant Ella M. Perkins ["Perkins"] filed this action seeking review of a final decision by the defendant ["Commissioner"] (Doc. # 1) pursuant to 42 U.S.C. §§ 405(g) and 1383(c). (Doc. # 1, p. 1). Upon review of the record and the briefs submitted by the parties, the court concludes that the Commissioner's decision should be affirmed.

**I.   PROCEDURAL BACKGROUND AND FACTS**

Perkins filed for disability insurance benefits and supplemental security income benefits on 16 January 2003 and claimed that she had become disabled as of 19 December 2002 (R. 46-48; 251-53). She contends that she is unable to work due to "hypertension, diabetes, high cholestrol [sic], broken foot, kidney trouble, [and] peripheral neuropthy [sic]" (R. 57). These conditions, she contends, render her unable to walk or stand for "periods of time" and expose her to the possibility of a stroke. *Id.* At a hearing before an administrative law judge ["ALJ"], Perkins acknowledged that her "primary problems" are her "ankle and the diabetes mellitus and . . . carpal tunnel syndrome . . . combined . . . that render her

incapable of maintaining substantial gainful employment on a continuous basis" (R. 279).

Perkins is 58 years old and has a high school education (R. 46, 63). During the relevant time period, Perkins has worked as a "part time food service worker[,] . . . day care worker," mail carrier, mail clerk and computer operator (R. 22).

Her application was denied initially, and a hearing before ALJ Vincent P. Intoccia resulted in an unfavorable decision (R. 13-23; 25-26). After receiving additional evidence, the Social Security Administration's Appeals Council denied Perkins's request to review the ALJ's decision, thus rendering his decision the final decision of the Commissioner. Perkins then filed this timely lawsuit (Doc. # 1).

## II.  STANDARD OF REVIEW

The district court's review of the Commissioner's decision is a limited one. Reviewing courts "may not decide the facts anew, reweigh the evidence, or substitute [their] judgment for that of the [Commissioner]." ***Miles v. Chater***, 84 F.3d 1397, 1400 (11th Cir. 1996) (citing ***Bloodsworth v. Heckler***, 703 F.2d 1233, 1239 (11th Cir. 1983)). The court must affirm the Commissioner's decision "if it is supported by substantial evidence and the correct legal standards were applied," ***Kelley v. Apfel***, 185 F.3d 1211 (11th Cir. 1999) (citing ***Graham v. Apfel***, 129 F.3d 1420, 1422 (11th Cir. 1997)).[1] This is true despite the existence

---

[1] In ***Graham v. Apfel***, 129 F. 3d at 1422, the Court of Appeals stated that:

> Substantial evidence is described as more than a scintilla, and means such relevant evidence as a reasonable mind might accept as adequate to support

of substantial evidence "contrary to the findings of the ALJ." *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991). "There is no presumption, however, that the Commissioner followed the appropriate legal standards in deciding a claim for benefits or that the legal conclusions reached were valid." *Miles*, 84 F.3d at 1400 (citations omitted).

### III.   DISCUSSION

*A.   Standard for Determining Disability*

An individual who files an application for Social Security disability benefits must prove that she is disabled, which means that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2000); *see also* 20 C.F.R. §§ 404.1512(a), 416.912(a) (2000).

The regulations governing disability determinations provide a five-step sequential evaluation process that the ALJ must follow to determine whether a claimant has proven that she is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also* ***Ambers v. Heckler***, 736 F.2d 1467, 1469 (11th Cir. 1984); ***Williams v. Barnhart***, 186 F. Supp. 2d 1192, 1195 (M.D. Ala. 2002). If the claimant is not currently engaged in substantial gainful activity, the ALJ must

---

a conclusion. *See **Richardson v. Perales***, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

3

determine whether she suffers from a severe impairment that has lasted or is expected to last 12 months or more. §§ 404.1509, 416.909, 404.1520(a)(4)(i)-(ii), 416.920(a)(4)(i)-(ii). If so, and the impairment(s) is of such severity as to meet or medically equal a condition described in the SSA's "Listing of Impairments," then the claimant will be found to be disabled. §§ 404.1520(a)(4)(iii); 404, subpt. P, app. 1; 416.920(a)(4)(iii).

If the claimant's severe impairment(s) does not automatically qualify her for disability benefits, the ALJ must then assess her residual functional capacity ["RFC"], which represents "the most [a claimant] can still do despite [her] limitations." §§ 404.1545(a), 416.945(a). Considering his RFC, the ALJ must determine whether the claimant is able to perform the physical and mental demands of her past relevant work. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If not, the ALJ must determine whether, considering her RFC, age, education, and past work experience, the claimant is capable of performing other jobs available in significant numbers in the national economy. §§ 404.1520(a)(4)(v), 404.1560(c), 416.920(a)(4)(v), 416.960(c).

### B.   *Application of the Standard: The ALJ's Findings*

After reviewing the evidence in the record and discussing the relevant law, the ALJ made the following findings:

> 1.  The claimant met the insured status requirements of the Social Security Act as of the alleged onset date.
>
> 2.  The claimant has not engaged in substantial gainful activity since the alleged onset date.

>   3.  The claimant has "severe" impairments, including left ankle fracture, status post ORIF; Hypertension, controlled with medication; non-insulin dependent diabetes mellitus; bilateral carpal tunnel syndrome; morbid obesity; and Hypercholesterolemia, on medication.
>
>   4.  The claimant's impairments, considered individually and in combination, do not meet or equal in severity any impairment set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1.
>
>   5.  The claimant's allegations of pain and functional limitations are not credible.
>
>   6.  The claimant retains the residual functional capacity to perform work at the light exertional level.
>
>   7.  The claimant can perform past relevant work.
>
>   8.  The claimant is not disabled within the meaning of the Social Security Act.

(R. 22-23).

Perkins disagrees and contends generally that the ALJ's opinion is not supported by substantial evidence in the record (Doc. # 7). Specifically, Perkins challenges the ALJ's evaluation of the demands of her past relevant work, his decision to accord substantial weight to the opinion of consultative examiner P. N. Golomb, M.D., P.C. ["Dr. Golomb"], and his conclusion that her subjective complaints were not credible (Doc. # 7, pp. 5-6).

### C. *Past Relevant Work*

Perkins claims that the ALJ failed to "obtain detailed information about strength,

endurance, manipulative ability, mental demands and other job requirements" (Doc. # 7, p. 5).  Moreover, Perkins contends, "the ALJ does not state which of the claimant's past relevant work she was able to perform." *Id.*  Both arguments lack merit.

A claimant's past relevant work is statutorily defined as  "work [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." §§ 404.1560(b)(1); 416.960(b)(1).  Although the claimant is the primary source of information regarding past employment, the Commissioner

> may also ask other people who know about your work. [The Commmissioner] may use the services of vocational experts or vocational specialists, or other resources, such as the "Dictionary of Occupational Titles" and its companion volumes and supplements, published by the Department of Labor, to obtain evidence we need to help us determine whether [a claimant] can do [his] past relevant work, given [the claimant's] residual functional capacity.

§§ 404.1560(b)(2); 416.960(b)(2).

The plaintiff must demonstrate that she is unable to return to past work both as she performed it and as it is generally performed in the national economy.  *See* **Schnorr v. Bowen**, 816 F.2d 578, 581 (11th Cir. 1987) (noting the plaintiff's burden); Titles II and XVI: Past Relevant Work - - The Particular Job or the Occupation as Generally Performed, Soc. Sec. Rul. 82-61 (1982).

At Perkins's hearing, the ALJ elicited testimony from a vocational expert, who described the relevant requirements of Perkins's past relevant work based not only on a detailed work history report Perkins herself had completed and on which she provided the

6

information she now contends was lacking from the record, but also on information contained in the ***Dictionary of Occupational Titles*** ["D.O.T."] (R. 320-21). Thus, the evidence in the record was sufficient for the ALJ to make a decision regarding her ability to return to past relevant work. *See* Titles II and XVI: A Disability Claimant's Capacity to Do Past Relevant Work, In General, Soc. Sec. Rul. 82-62 (1982). Moreover, the ALJ, who adopted the VE's conclusions, clearly considered the relevant evidence in the record. *See* Soc. Sec. Rul. 82-61 ("The Dictionary of Occupational Titles (DOT) descriptions can be relied upon . . . to define the job as it is usually performed in the national economy.").

### D.     *Reliance on Dr. Golomb's Assessment of Perkins's RFC*

Perkins contends that the ALJ's reliance on the assessment of her RFC provided by Dr. Golomb was erroneous because Dr. Golomb "did not provide specific diagnoses . . .[,] was limited to an evaluation of only the claimant's lower back and left ankle impairments, . . . and . . . did not take into account the other impairments that the ALJ found to be severe, including bilateral carpal tunnel syndrome, hypertension, diabetes mellitus and hypercholesterolemia" (Doc. # 7, p. 6).

Perkins fails to direct the court to any legal authority requiring consultative examiners to provide independent diagnoses. Furthermore, Dr. Golomb specifically noted her history of diabetes and hypertension and stated that he had considered the medical evidence in the

7

record "provided by the DDS" (R. 247).[2] In addition, Dr. Golomb's report indicates that he conducted a thorough physical examination and evaluated Perkins's medical, family and social history as well as her physical appearance on the day of the examination (R. 245-46).

Although Dr. Golomb did not specifically mention her carpal tunnel syndrome, his report, which indicates his efforts to obtain her medical history, suggests that Perkins failed to mention it to him.  Nevertheless, Dr. Golomb examined Perkins's hand strength and dexterity:

> She was quite strong.  The strength of her major muscle groups, including her hand grip strength and finger dexterity, were all rated as 5 out of 5.  She could make a fist with each hand; she could oppose the thumb to the fingers of each hand.  She could button and unbutton clothes, tie shoelaces, pick up small objects, hold a glass, turn a doorknob, etc.

(R. 246).

Finally, the record before the court contains no evidence that her cholesterol levels or her carpal tunnel syndrome resulted in any functional limitations.[3]  Consequently, Perkins's contentions are baseless, and the ALJ did not err by relying on Dr. Golomb's assessment.

---

[2] Perkins does not allege that the record provided to Dr. Golomb was insufficient.

[3] The record contains only one diagnoses for carpal tunnel syndrome during the relevant time period. On 16 May 2002, Larry W. Epperson, M.D., diagnosed "advanced carpal tunnel syndrome bilaterally" and established a conservative treatment plan consisting of "cloth wrist splints, B-6, and an exercise program" (R. 101).  The record contains no other evidence that Perkins was thereafter treated for or complained about this condition.

*E.     Evaluation of Subjective Complaints*

Perkins's argument concerning this issue is similarly flawed.  The ALJ's evaluation of her subjective complaints reflects a correct application of the regulations and the case law of the Eleventh Circuit.  *See* 20 C.F.R. §§ 404.1529, 416.929; ***Wilson v. Barnhart***, 284 F.3d 1219, 1225 (11th Cir. 2002) (setting forth the standard for determining whether the ALJ must consider a claimant's subjective complaints).  The record does not support Perkins's complaints of extreme pain or establish the existence of any conditions that could give rise to the pain from which she allegedly suffers.  Although the ALJ appropriately found additional reasons to discredit her testimony, it is not necessary for the court to address the matter further.

## IV.     CONCLUSION

Therefore, it is hereby

ORDERED that the final decision of the Commissioner is AFFIRMED.

DONE this 3rd day of August, 2006.

/s/ Vanzetta Penn McPherson
VANZETTA PENN MCPHERSON
UNITED STATES MAGISTRATE JUDGE